MacInnes v MacInnes

Docket No. 241649. Submitted November 12, 2003, at Detroit. Decided
    January 8, 2004, at 9:05 A.M.

> The estate of Cheryl A. Rowley, deceased, brought a postjudgment
> motion in the Genesee Circuit Court against Joe D. MacInnes,
> Rowley's ex-husband, for enforcement of a provision in their
> divorce judgment that released all rights of either party to the pro-
> ceeds of any life insurance policy on the life of the other. The
> court, Duncan M. Beagle, J., determined that the provision acted as
> a waiver of any right of the defendant to the proceeds of a life
> insurance policy that was provided to Rowley by her employer,
> administered by an insurance company as an employee welfare
> benefit plan regulated by the Employee Retirement Income Secur-
> ity Act (ERISA), 29 USC 1001 *et seq.*, and on which the defendant
> remained as beneficiary despite the divorce. The court ordered the
> defendant to pay the estate an amount equal to the insurance pro-
> ceeds he received. The defendant appealed, arguing that the pro-
> ceeds from Rowley's life insurance policy should be his because
> the insurance plan was governed by ERISA, the plan's records
> showed him as the beneficiary, and ERISA preempts the divorce pro-
> vision's exclusion of him as a recipient of insurance proceeds. He
> also argued that the consent decree was not a contract under
> which he had waived his rights as a beneficiary.
>
> The Court of Appeals *held*:
>
> 1. ERISA does not preempt a waiver of rights under state law. A
> provision determining the rights of the divorcing spouse to the pro-
> ceeds of any life insurance policy owned by the other spouse is
> required by MCL 552.101(2) and (3). Though federal courts are
> divided on the issue whether ERISA preempts state law with respect
> to determining beneficiary status under an ERISA-regulated benefits
> plan, the majority of the federal courts hold, and the Court of
> Appeals held, that ERISA does not preempt an explicit waiver of
> interest by a nonparticipant beneficiary of such a plan.
>
> 2. The defendant waived his right to the life insurance proceeds
> in the divorce judgment. The consent judgment of divorce is a con-
> tract, and any potential or previously existing property rights in the
> insurance proceeds could be waived in that contract. A reasonable

person would have understood that he waived his interest in the insurance benefits in question by consenting to the entry of the judgment.

Affirmed.

Murphy, J., concurring in the result, stated that the majority's reasoning erred to the extent that the majority held that a plan-designated beneficiary can waive an interest in an ERISA-governed plan by way of a consent divorce judgment. That waiver would legally obligate the plan administrator to determine the existence of an effective waiver and abide by it. The preemption provision of ERISA, 29 USC 1144(a), does not permit a court to circumvent the plan in that manner. ERISA does not allow for the creation of a legal obligation for the plan administrator to determine beneficiary status predicated on language contained in a divorce judgment, even under a waiver theory. The plan administrator is solely controlled by the plan documents. Waiver, if factually established, permits an action for the recovery of proceeds paid to a plan-designated beneficiary or paid to a court or trust account by the administrator as part of an interpleader action.

1. DIVORCE — CONSENT JUDGMENTS — LIFE INSURANCE — WAIVERS — EMPLOYEE RETIREMENT INCOME SECURITY ACT.

The Employee Retirement Income Security Act does not preempt a waiver of rights under a state law where a provision in a consent judgment of divorce determines the rights of each divorcing spouse in the proceeds of an employer-provided life insurance policy owned by the other (29 USC 1001 *et seq.*; MCL 552.101).

2. DIVORCE — CONSENT JUDGMENTS — CONTRACTS — WAIVERS OF PROPERTY RIGHTS.

A consent judgment of divorce is a contract, and property rights may be waived in that contract.

*Gentry Law Offices, P.C.* (by *Kevin S. Gentry*), for the plaintiff.

*Schmidt, Isgrigg & Anderson* (by *Russell C. Anderson*) for the defendant.

Before: FORT HOOD, P.J., and MURPHY and NEFF, JJ.

NEFF, J. Defendant appeals by delayed leave a postjudgment enforcement order of the trial court in a divorce action directing him to pay to plaintiff

$95,000 in life insurance proceeds he received upon the death of his former wife, Cheryl Rowley, where she failed to change the beneficiary designation on her life insurance policy after the couple's divorce. The decedent's estate was substituted for the original plaintiff by the court pursuant to MCR 2.202. The court concluded that the provision in the consent judgment of divorce that released all rights of either party to the proceeds of any life insurance policy on the life of the other waived defendant's right to Rowley's life insurance proceeds. We affirm.

I

Defendant and Rowley divorced on November 1, 1995, after a nine-year marriage. The consent judgment of divorce provided "that . . . all rights of either party in and to the proceeds of any policy or contract of life insurance . . . upon the life of the other in which said party was named or designated as beneficiary . . . shall hereupon become and be payable to the estate of the owner of said policy, or such named beneficiary as shall hereafter be affirmatively designated." Rowley died on November 1, 2000. At the time of her death, she participated in a Delphi Automotive Life and Disability Benefits Program administered by Metropolitan Life Insurance Company, an employee welfare benefit plan regulated by the Employee Retirement Income Security Act (ERISA), 29 USC 1001 et seq. The deceased had participated in this program before the couple's divorce and had designated defendant as her beneficiary. She had not changed the beneficiary designation after the divorce and before her death. Metropolitan Life paid the insurance proceeds

of approximately $95,000[1] to defendant.[2] The trial court granted plaintiff's motion to enforce the judgment of divorce and ordered defendant to pay plaintiff an amount equal to the insurance proceeds.

II

The construction and application of a statute involve questions of law. *Burba v Burba (After Remand)*, 461 Mich 637, 647; 610 NW2d 873 (2000); *Atchison v Atchison*, 256 Mich App 531, 534-535; 664 NW2d 249 (2003). Similarly, the question of what constitutes a waiver is a question of law. *Leibel v Gen Motors Corp*, 250 Mich App 229, 240; 646 NW2d 179 (2002). A settlement agreement, such as a stipulation and property settlement in a divorce, is construed as a contract. Interpretation of unambiguous and unequivocal contract language is a question of law. *Massachusetts Indemnity & Life Ins Co v Thomas*, 206 Mich App 265, 268; 520 NW2d 708 (1994). This Court reviews de novo questions of law. *Burba, supra.*

III

Defendant argues that he is entitled to the $95,000 proceeds from Rowley's life insurance policy because

___

[1] The order directed defendant to pay an amount equal to the total insurance proceeds, including $61,000 from the basic life portion, $30,500 from the extra accident portion, and $3,500 interest.

[2] For this reason, the concurring opinion analysis is obiter dictum because it is not essential to the resolution of this case. *Dressel v Ameribank*, 468 Mich 557, 568 n 8; 664 NW2d 151 (2003); *Terra Energy, Ltd v Michigan*, 241 Mich App 393, 400; 616 NW2d 691 (2000). The facts presented are that defendant, the plan-designated beneficiary, received payment of the life insurance proceeds. The proceeds were thereafter placed in escrow. The question whether waiver may be applied in other factual circumstances is therefore not before us.

the provisions of ERISA preempt the provision of the divorce judgment, purporting to alter the beneficiary to an insurance plan governed by ERISA, and because the provision in the divorce judgment is not binding as a contract between Rowley and him. Accordingly, he contends, the trial court erred in circumventing the preemption issue and concluding that the terms of the divorce judgment constituted a contract under which defendant waived his rights as a beneficiary.

### A. PREEMPTION

Defendant relies principally on *Egelhoff v Egelhoff*, 532 US 141; 121 S Ct 1322; 149 L Ed 2d 264 (2001), in arguing that the life insurance provision in the divorce judgment is preempted by ERISA. We find *Egelhoff* inapposite to the ultimate issue in this case.

In *Egelhoff*, the United States Supreme Court held that a state of Washington statute, which provided that the designation of a spouse as the beneficiary of a nonprobate asset is revoked automatically upon divorce, was expressly preempted by ERISA to the extent that it applies to ERISA plans. "ERISA's pre-emption section, 29 USC § 1144(a), states that ERISA 'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by ERISA." *Egelhoff, supra* at 146. The Court concluded that the Washington statute "related to" an ERISA plan, i.e., had an impermissible connection with ERISA, because it governed the payment of benefits and it interfered with nationally uniform plan administration—both areas of core ERISA concern. The Court observed that the Washington statute bound "ERISA plan administrators to a particular choice of rules for determining beneficiary status," and, conse-

quently, plan "administrators were required to pay benefits to the beneficiaries chosen by state law, rather than those identified in the plan documents." *Id.* at 147. The statute therefore ran "counter to ERISA's commands that a plan shall 'specify the basis on which payments are made to and from the plan,' § 1102(b)(4), and that the fiduciary shall administer the plan 'in accordance with the documents and instruments governing the plan,' § 1104(a)(1)(D), making payments to a 'beneficiary' who is 'designated by a participant, or by the terms of [the] plan.' § 1002(8)." *Egelhoff, supra* at 147.

In finding that the Washington statute was preempted, the Court reasoned that the statute frustrated ERISA's goal of uniform administration because plan administrators must familiarize themselves with state statutes to determine whether the named beneficiary's status was revoked by operation of law. The problem could be exacerbated by choice-of-law issues when an employer was located in one state, the plan participant in another state, and the former spouse in, perhaps, a third state. The Court recognized that all state laws created the potential for a lack of uniformity, but that differing state regulations affecting claim processing and payment of benefits under an ERISA plan were the exact burdens ERISA's preemption was intended to avoid. *Id.* at 149-150.

We find the *Egelhoff* analysis inapposite because in this case the ultimate issue is not whether a state statute is preempted. To the extent that defendant contends that the provision in the divorce judgment is indirectly preempted because MCL 552.101(2) and (3) require that all divorce judgments contain a provision determining the rights of the divorcing spouse to the

proceeds of any life insurance policy owned by the other spouse, we disagree.

The circumstances of this case convince us that the issue presented is most appropriately resolved under principles of waiver rather than preemption. See *Metropolitan Life Ins Co v Pressley*, 82 F3d 126, 129 (CA 6, 1996) ("[a]lthough [federal courts of appeal] agree that ERISA preempts state law regarding the designation of beneficiaries, [they] are split concerning the manner in which the beneficiary is then determined"). Under the view taken by the majority of the federal circuits, "[e]ven where ERISA preempts state law with respect to determining beneficiary status under an ERISA-regulated benefits plan, ERISA does not preempt an explicit waiver of interest by a nonparticipant beneficiary of such a plan." *Melton v Melton*, 324 F3d 941, 945 (CA 7, 2003); see also *Silber v Silber*, 99 NY2d 395, 402, 404; 786 NE2d 1263 (2003); *Pressley, supra.* We concur with the majority view and resolve this case accordingly.[3]

### B. WAIVER

A majority of federal circuit courts of appeal have concluded that waivers of beneficiary rights are possible under ERISA-governed plans.[4] *Silber, supra* at 402.

---

[3] State courts are bound by the holdings of federal courts on a federal question on which there is no conflict among federal appellate courts. *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 470; 628 NW2d 577 (2001). However, if there is no United States Supreme Court decision concerning the interpretation at issue and a conflict exists among the federal circuit courts of appeal, the state court is free to choose the view it determines most appropriate. *Schueler v Weintrob*, 360 Mich 621, 634; 105 NW2d 42 (1960)

[4] The United States Court of Appeals for the Sixth Circuit is not among the majority and, instead, has adopted the minority "plan document"

The majority view reasons that, because "ERISA is silent on the issue of what constitutes a valid waiver of interest," the courts must turn to federal common law and state law to fill the gap. *Melton, supra* at 945; see also *Silber, supra* at 404. Circuits following the majority view have examined whether there is proof of a specific termination of the rights in question or, stated differently, whether a waiver by a designated beneficiary of an ERISA-regulated benefits plan was explicit, voluntary, and made in good faith. *Melton, supra* at 945. "Essentially, when we are evaluating whether the waiver is effective in a given case, we are more concerned with whether a reasonable person would have understood that she was waiving her interest in the proceeds or benefits in question than with any magic language contained in the waiver itself." *Id.* at 945-946, citing, e.g., *Clift v Clift*, 210 F3d 268, 271 (CA 5, 2000). Michigan courts have defined "waiver" as the voluntary and intentional relinquishment of a known right. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 69; 642 NW2d 663 (2002); *People v Carines*, 460 Mich 750, 762 n 7; 597 NW2d 130 (1999).

In this case, the provision at issue in the divorce judgment stated:

### LIFE INSURANCE

It is further ordered and adjudged, that except as otherwise provided, all rights of either party in and to the proceeds of any policy or contract of life insurance, endowment, or annuity upon the life of the other in which said party was named or designated as beneficiary, or to which

---

approach, which does not permit an alteration of beneficiaries. Consequently, under the minority view, common-law doctrines such as waiver may not be used to override a beneficiary designation. *Silber, supra* at 403.

said party became entitled by assignment or change of beneficiary during the marriage or in anticipation thereof, whether such contract or policy was heretofore or shall hereafter be written or become effective, shall hereupon become and be payable to the estate of the owner of said policy, or such named beneficiary as shall hereafter be affirmatively designated.

Defendant does not argue that he did not knowingly and voluntarily agree to the above provision in the consent judgment of divorce. Rather, he argues that the provision does not waive his rights to the insurance proceeds, but acts only to substitute the estate as the insurance beneficiary and therefore should not be given effect because it is in conflict with the preemption goals of ERISA. Moreover, the provision imposes no duty on him to pay over the life insurance proceeds. We disagree.

Having concurred with the majority view in the federal circuits and concluded that giving effect to the above provision does not compromise the purpose and goals of ERISA, *Melton, supra* at 945, we hold that defendant waived his rights to the life insurance proceeds at issue and thus is not entitled to retain them. The above provision is all-inclusive with regard to defendant's relinquishment of his right to life insurance proceeds from policies owned by his former wife: "[E]xcept as otherwise provided, *all* rights . . . to the proceeds of *any* policy . . . of life insurance . . . shall hereupon become and be payable to the estate of the owner of said policy . . . ." (Emphasis added.) This language is explicit in its intent to divest defendant of his interest in life insurance proceeds from policies owned by Rowley. *Thomas v Detroit Retirement Sys*, 246 Mich App 155, 160-161; 631 NW2d 349

(2001); *Massachusetts Indemnity, supra* at 268; see also *Clift, supra* (no "magic words" necessary for effective waiver). In our view, giving effect to the waiver best serves the ends of justice where a divorcing couple's intent is clear. *Silber, supra* at 403-404.

We find no merit in defendant's argument that the trial court erroneously viewed the consent judgment of divorce as a contract. As the trial court recognized, a divorce judgment entered by consent is in the nature of a contract, and a settlement agreement, i.e., a stipulation and property settlement, is a contract:

> Included in the judgment of divorce was a stipulation and property settlement containing a provision, entitled "Insurance Waiver". . . .
>
> *         *         *
>
> Judgments entered pursuant to the agreement of the parties are of the nature of a contract, rather than a judicial order entered against one party. Furthermore, a settlement agreement, which is what the stipulation and property settlement is, is a contract and is to be construed and applied as such. [*Massachusetts Indemnity, supra* at 267-268 (citations omitted).]

In this case, the consent judgment of divorce stated that the parties agreed and stipulated to the judgment of divorce, which included the provision on life insurance. Defendant's argument that he is not required to pay plaintiff the life insurance proceeds because neither party signed the judgment of divorce— because although the parties consented to entry of the document, they are not bound in the absence of their signatures under the ordinary rules of contract—borders on the frivolous.

We affirm the trial court's order directing defendant to pay plaintiff an amount equal to the total insurance proceeds of $95,000. Defendant has waived any issue concerning the lack of record support for the $95,000 amount because he stipulated to placing $95,064.74 in escrow pending appeal and he admits that the correct amount was placed into escrow. *Phinney v Perlmutter*, 222 Mich App 513, 544; 564 NW2d 532 (1997).

Affirmed.

FORT HOOD, P.J., concurred.

MURPHY, J. (*concurring*). I agree with the majority's conclusion that we can affirm the trial court's order directing defendant to pay plaintiff an amount equal to the total insurance proceeds of $95,000. But I do not believe that the majority's analysis is entirely consistent with the Employee Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.*, and *Egelhoff v Egelhoff*, 532 US 141; 121 S Ct 1322; 149 L Ed 2d 264 (2001). The majority states:

> Under the view taken by the majority of the federal circuits, "[e]ven where ERISA preempts state law with respect to determining beneficiary status under an ERISA-regulated benefits plan, ERISA does not preempt an explicit waiver of interest by a nonparticipant beneficiary of such a plan." *Melton v Melton*, 324 F3d 941, 945 (CA 7, 2003); see also *Silber v Silber*, 99 NY2d 395, 402, 404; 786 NE2d 1263 (2003); [*Metropolitan Life Ins Co v*] *Pressley*, [82 F3d 126 (CA 6, 1996)]. We concur with the majority view and resolve this case accordingly. [*Ante*, p 286.]

To the extent that the majority can be read to hold that a plan-designated or plan-named beneficiary can waive an interest in an ERISA-governed plan by way of a consent divorce judgment, so that the plan adminis-

trator is legally obligated to determine the existence
of a waiver and abide by an effective waiver, without
an actual change in the beneficiary status through the
use of plan documents, I respectfully disagree. I
would rule that the doctrine of "waiver," in the con-
text of divorce statutes and judgments, does not per-
mit this Court or any court to circumvent the ERISA
preemption provision found in 29 USC 1144(a), as it
relates to the legal obligations of a plan administrator.
Nevertheless, I believe that a pertinent provision of a
consent judgment of divorce retains relevance for the
purpose of waiver, assuming that it reflects an effec-
tive waiver by the plan-designated beneficiary, where
there is an attempt to recover proceeds actually paid
to the plan-designated beneficiary or deposited in a
court or trust account by the plan administrator as
part of an interpleader action, MCR 3.603.

Through this bifurcated approach, ERISA is not
offended because plan administrators are able to
determine beneficiary status and distribute proceeds
to a beneficiary "in accordance with the documents
and instruments governing the plan . . . ," 29 USC
1104(a)(1)(D), without the need to make beneficiary
determinations based on the interpretation of divorce
judgments. Through the bifurcated approach, a plan-
designated beneficiary could remain legally bound by
an explicit waiver of any interest in benefits or pro-
ceeds. To hold otherwise would create havoc for plan
administrators and, in my opinion, would violate ERISA
or would work an injustice by allowing a party to
retreat from a voluntary relinquishment of rights.

In *Egelhoff, supra* at 143, the United States
Supreme Court held that ERISA preempted a Washing-
ton statute, which provided "that the designation of a

spouse as the beneficiary of a nonprobate asset is revoked automatically upon divorce." The *Egelhoff* Court stated:

> The statute binds ERISA plan administrators to a particular choice of rules for determining beneficiary status. The administrators must pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents. The statute thus implicates an area of core ERISA concern. In particular, it runs counter to ERISA's commands that a plan shall "specify the basis on which payments are made to and from the plan," § 1102(b)(4), and that the fiduciary shall administer the plan "in accordance with the documents and instruments governing the plan," § 1104(a)(1)(D), making payments to a "beneficiary" who is "designated by a participant, or by the terms of [the] plan." § 1002(8). In other words, unlike generally applicable laws regulating "areas where ERISA has nothing to say," which we have upheld notwithstanding their incidental effect on ERISA plans, this statute governs the payment of benefits, a central matter of plan administration.
>
> The Washington statute also has a prohibited connection with ERISA plans because it interferes with nationally uniform plan administration. One of the principal goals of ERISA is to enable employers "to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." Uniformity is impossible, however, if plans are subject to different legal obligations in different States.
>
> The Washington statute at issue here poses precisely that threat. Plan administrators cannot make payments simply by identifying the beneficiary specified by the plan documents. Instead they must familiarize themselves with state statutes so that they can determine whether the named beneficiary's status has been "revoked" by operation of law. . . .
>
> Requiring ERISA administrators to master the relevant laws of 50 States and to contend with [divorce] litigation would undermine the congressional goal of "minimizing the administrative and financial burden[s]" on plan administrators—

burdens ultimately borne by the beneficiaries. [*Egelhoff*, *supra* at 147-150 (citations omitted).]

The Supreme Court further stated that "we have not hesitated to find state family law pre-empted when it conflicts with ERISA or relates to ERISA plans." *Id.* at 151. In *Metropolitan Life Ins Co v Johnson*, 297 F3d 558, 566 (CA 7, 2002), United States Court of Appeals for the Seventh Circuit stated that "*Egelhoff* stands for the proposition that a state law cannot invalidate an ERISA plan beneficiary designation by mandating distribution to another person."

I note that in *Egelhoff*, Mrs. Egelhoff remained the listed beneficiary of a life insurance policy and pension plan at the time of Mr. Egelhoff's death despite the entry of a divorce judgment, and life insurance proceeds were paid to Mrs. Egelhoff. Mr. Egelhoff's children by a previous marriage, the statutory heirs at law, sued, ultimately unsuccessfully, to recover the life insurance proceeds from Mrs. Egelhoff. Although unnecessary for the purpose of resolving this case, it would thus appear that any Michigan divorce statute or divorce judgment entered after trial that provides for a beneficiary different from the person(s) designated in ERISA-plan documents would not be enforceable under ERISA's preemption provision until an actual beneficiary change is made in the plan documents. *Egelhoff* did not, however, involve a situation where the plan-designated beneficiary allegedly waived a claim to benefits. The question becomes whether the doctrine of waiver can be applied in the context of the present case, and, if applicable, in what manner it should apply.

As noted above, I would hold that ERISA, as interpreted by the Supreme Court in *Egelhoff*, does not

allow for the creation of a legal obligation for the plan administrator to determine beneficiary status predicated on language contained in a divorce judgment, even under a waiver theory; the plan administrator is to be solely controlled by the plan documents. But I would still apply the doctrine of waiver, if factually established, to permit recovery of proceeds paid to a plan-designated beneficiary or recovery of proceeds deposited in a court or trust account by a plan administrator as part of an interpleader action. I acknowledge that this approach does not fully adopt the Seventh Circuit's ruling in *Melton,* and, in fact, combines part of the ruling in *Melton* with the Sixth Circuit's ruling in *Pressley.* I find that this approach is mandated by *Egelhoff* and could be coined as the "limited waiver doctrine." In *Melton, supra* at 945, the Seventh Circuit stated:

> We therefore hold that ERISA preempts Illinois state law with respect to determining the rightful beneficiary of Richard's [deceased husband] ERISA-regulated group term life insurance policy. Since Richard's ERISA-regulated employee benefits plan determines beneficiary status according to the person(s) named in the plan documents, we also find that Peggy [the deceased's ex-wife] is the proper beneficiary of the insurance policy.
>
> Having determined that Peggy, and not Alexandria [the deceased's minor daughter], is the beneficiary of Richard's group term life insurance policy, we still must address Alexandria's contention that Peggy waived her interest in these benefits by the terms of her divorce agreement with Richard.[1]

---

[1] Richard married Peggy Melton in 1993. During their marriage Richard named Peggy as the primary beneficiary of his employee benefits plan, which included group term life insurance benefits. Richard and Peggy divorced in May 2001. Their divorce agreement contained a blanket revocation of their interests in all financial and

*Melton* implicitly indicates that "waiver" can be utilized to modify the determination concerning who shall be entitled to actual receipt of benefits or proceeds; therefore, affecting a plan administrator's legal obligation to distribute proceeds, which distribution by the administrator could be made to a person not named as a beneficiary in plan documents. The plan administrator, in the face of competing claims, would either have to initiate an interpleader action or be forced to make a payment determination on the basis of an interpretation of the divorce judgment and controlling law so as to determine whether an effective waiver occurred. *Melton* and the cases relied on therein sidestep the preemption provision of 29 USC 1144(a), which expressly and necessarily relates to the preemption of state law, by turning to federal common law concerning waiver. The federal court stated that "[w]e noted in *Fox Valley [& Vicinity Construction Workers Pension Fund v Brown*, 897 F2d 275, 280 (CA 7, 1990) (en banc)] that ERISA is silent on the issue of what constitutes a valid waiver of interest and we therefore turned to federal common law and Illinois state law to fill the gap." *Melton, supra* at 945. The Seventh Circuit further stated:

> Essentially, when we are evaluating whether the wiaver [sic] is effective in a given case, we are more concerned with whether a reasonable person would have understood

---

property rights arising "by reason of their marital relation" and "any asset assigned to a party by this agreement" including "annuities, life insurance policies," and other financial instruments. . . .

. . . Although Richard and Peggy divorced six months before Richard died, Peggy was still the named beneficiary of Richard's employee group term life insurance policy. [*Melton, supra* at 943-944.]

that she was waiving her interest in the proceeds or bene-
fits in question than with any magic language contained in
the waiver itself. [*Id.* at 945-946 (citation omitted).]

I find that this approach and analysis requires
review of a divorce judgment and a subjective deter-
mination, after contemplation of federal law and state
law regarding waiver, to determine whether a waiver
occurred. This burden on plan administrators con-
flicts with the ruling in *Egelhoff* that reflected a con-
cern with upholding uniform administrative schemes
and a need to not require plan administrators to cir-
cumnavigate the legal waters of the fifty states and
individual divorce litigation within the states. Indeed,
it would be an overwhelming burden to require plan
administrators to decipher divorce judgments to
determine if an effective waiver had occurred as
opposed to simply examining plan documents for the
named beneficiary. Having to file interpleader actions,
where multiple parties are making claims to plan pro-
ceeds, i.e., plan-designated beneficiaries versus
alleged judgment-designated beneficiaries, would also
be burdensome to plan administrators.

In *Pressley*, the insurance company filed an inter-
pleader action in which two parties, the deceased's
estate and the deceased's ex-wife, made claims on
insurance benefits. The Sixth Circuit refused to apply
the doctrine of waiver where the ex-wife, who was
named as the beneficiary in plan documents, allegedly
waived the recovery of insurance proceeds by reason
of the divorce judgment. *Id.* at 127-128, 130. The fed-
eral court stated:

> Section 404(a)(1)(D) of ERISA requires that a plan adminis-
> trator discharge his duties "in accordance with the docu-
> ments and instruments governing the plan . . . ." 29 U.S.C.

§ 1104(a)(1)(D). The Court in *McMillan* [*v Parrott*, 913 F2d 310 (CA 6, 1990)] found that section to establish a clear mandate that plan administrators follow plan documents to determine the designated beneficiary. 913 F.2d at 312. Accordingly, the Court held that the plan documents naming the decedent's [last] ex-wife as beneficiary of the plan controlled, making her the decedent's beneficiary. *Id.* [*Pressley, supra* at 130.]

I conclude that *Pressley* is correct and consistent with *Egelhoff* to the extent that it held that a plan administrator should be controlled solely by plan documents. I would, however, find that, by clearly indicating that a plan administrator is bound only by plan documents and not the language contained in divorce judgments, there is no danger for the purpose of a preemption violation in applying waiver with respect to an attempted recovery from an already-paid, plan-designated beneficiary or recovery from a court or trust account utilized in an interpleader action. Therefore, in my view *Pressley* goes too far in the name of preemption.

To summarize my analysis, the actions and obligations of a plan administrator should be solely controlled by the plan documents, and plan proceeds should be paid accordingly, without the need to determine if a waiver occurred. When multiple claims are made, the plan administrator could simply distribute proceeds pursuant to the plan documents or the administrator, if desired, could commence an interpleader action. The judgment-designated beneficiary could proceed under a waiver theory to seek recovery from a paid plan-designated beneficiary or from proceeds deposited with a court or trust account pursuant to an interpleader action. The judgment-designated beneficiary, however, could not legally force a

plan administrator to make direct payment to that beneficiary contrary to the plan documents under a waiver theory,[2] nor could the judgment-designated beneficiary sue the administrator for making a distribution to a plan-designated beneficiary.

Because here the proceeds were distributed to defendant, the plan-designated beneficiary, I would permit a waiver argument. I find that it is a close call regarding whether defendant made an effective waiver, considering a similar factual situation in *Melton* in which the court held that there was no effective waiver. *Melton, supra* at 946. That being said, I agree with my colleagues' analysis and ultimate conclusion that defendant in fact waived his rights to the proceeds from the ERISA-governed plan.

I concur in affirming.

---

[2] I would not preclude a judgment-designated beneficiary, proceeding under a waiver theory, from legally forcing a plan administrator to place proceeds in a court or trust account pending the outcome of a suit, which suit would necessarily include as a party the plan-designated beneficiary, where the administrator refuses to make any distribution whatsoever.